## REDFIELD *against* DAVIS:

6  439
76  91

### IN ERROR.

An agent is responsible to his principal for the want of competent skill, as well as fidelity, in the discharge of his agency.

But where *A.*, the master of a ship, owned by *B.*, received from *C.* at *New-York*, a quantity of flour, to transport to *South America*, and sell, with instructions from *C.*, after disposing of it, to deduct the stipulated freight and the charges, and to hold the net proceeds subject to the order of *B.*, at whose risk they were to be, and who was to account for them with *C.*; *A.* having sold the flour accordingly, made out his account of sales, giving credit for the sum received, and debiting the freight and charges, including a commission of 2 1-2 *per cent.* on a bill drawn by him for the avails of the flour; and on the face of the account it appeared, that the flour was paid for in doubloons estimated at 17 dollars, and that they were applied to the freight and charges at 15 dollars, which was done in good faith; in an action of account brought by *C.* against *A.*, it was held, 1. that *C.* was not bound by the account rendered, and consequently, sustained no legal injury thereby; 2. that the current value of the doubloons, at the place where they were received, was, in relation to *A.*'s liability, an immaterial enquiry; and 3. that the commission charged by *A.*, on the bill drawn by him for the avails of the flour, did not amount to a guaranty, so as to subject him to account for doubloons at their current value.

This was an action of account, brought by *Redfield* against

*New-Haven,*
June,
1827.

Redfield
*v.*
Davis.

*Davis,* for 862 barrels of flour, and 3856 bushels of wheat, alleged to have been received, by the defendant, to transport to *South America,* and to dispose of, for the plaintiff. The plaintiff obtained judgment *quod computet ;* and the cause went to auditors ; who reported, that the defendant was nothing in arrear. The plaintiff filed a remonstrance against the acceptance of the report; which was overruled, and the report accepted. Final judgment being rendered for the defendant, the record, on motion of the plaintiff, was transmitted to this Court, for revision.

The case presented by the record, is this. The defendant, being master of the ship *Laguira,* owned by *Nathaniel L. &* *G. Griswold,* received on board at *New-York,* a quantity of the plaintiff's wheat and flour to transport to *South America,* and sell. The plaintiff, by a letter of instructions, authorized the defendant, as his consignee, to go to any ports within the limits of his insurance, to dispose of the property. After effecting a sale, he was to deduct the stipulated freight, and the charges, including a commission of 2 1-2 *per cent.* for his services, and to hold the net proceeds subject to the order and appropriation of the Messrs. *Griswold,* as they had agreed to account with the plaintiff for the same. The net proceeds, after the actual reception of them by the defendant, were agreed, by these gentlemen, to be at their risk. The cargo was sold, by the defendant, at *Rio Janeiro,* in *South America,* and the whole of the avails were faithfully appropriated for the benefit of the Messrs. *Griswold.* The defendant made out his account of sales, giving credit for the sum received, and debiting the freight and charges, including a commission of 2 1-2 *per cent.* on a bill drawn for the avails of the cargo ; and on the face of this account, rendered to the plaintiff and the Messrs. *Griswold,* it appeared, that the cargo was paid for in doubloons, estimated at 17 dollars each; and that the defendant applied them to the freight and charges at 15 dollars. Why this was done did not distinctly appear; but it was found, that the defendant's account estimating the doubloons at 15 dollars, was made by him in good faith. The plaintiff offered to prove to the auditors, that the actual and current value of the doubloons at the time and place of their reception in *South America,* was 17 dollars each; which was the legal rate at which they were received and passed; but the evidence was rejected as irrelevant. To shew what was the law of the state of *New-York,* where the

shipment was made, and the agreement regarding it was enter- <span>*New-Haven,* July, 1827.</span>
ed into, the decision of Judge *Yates* on the circuit, in a cause
tried before him, between the plaintiff and the *Griswolds*, foun-
ded on said agreement, was adduced; but the auditors, in com- <span>Redfield *v.* Davis.</span>
ing to their result, relied on the general principles of commer-
cial law.

*N. Smith* and *R. S. Baldwin*, for the plaintiff, contended, 1.
That the defendant was the agent of the plaintiff, and as such
responsible to the plaintiff for competent skill, as well as fidel-
ity, in the discharge of his agency ; and if the plaintiff has been
injured, by the want of either, he is entitled to recover.   *Pal.*
*Ag.* 4—7.   *Sanches* & al. v. *Davenport* & al. 6 *Mass. Rep.* 258.
261.   The defendant, having, as the agent of the plaintiff, re-
ceived the doubloons at 17 dollars, and applied them to the use
of the *Griswolds*, and charged them in his account as of less
value, bound the plaintiff, by that account, not only by the gen-
eral principles of the law of agency, but by the terms of the
agreement between the *Griswolds* and the plaintiff.   He receiv-
ed them as a *currency*, and accounted for them as an article of
*merchandize.*   As it regards the plaintiff, the defendant has *giv-
en away* the difference.

2. That the actual and current value of the doubloons in
*South America*, was a material enquiry, with reference to the
*freight ;* as *that* was payable in the currency of the country
where it was to be paid.   3 *Dall.* 374. n.   *Chitt. Bills.* 110,
111.

3. That as the defendant charged and received a commis-
sion on the sale of the cargo, he was bound to account for its
full value.   If, as he claims, doubloons were worth only 15 dol-
lars, he had no right to receive them at 17 dollars.   This dif-
ference the *Griswolds*, according to the defendant's own claim,
had no concern with.   *Pal. Ag.* 28.   *Molloy* 424.

*Sherman*, for the defendant.

HOSMER, Ch. J.   It appears from the finding of the audi-
tors, that there is no peculiar law of *New-York* on the subject
in controversy ; but the question depends on the general prin-
ciples of commercial law.   This enables the Court to dispose
of, at once, the opinion expressed by a respectable judge of
that state.   An opinion given at *Nisi Prius* would not be ob-

*New-Haven,*
July,
1827.

*Redfield
v.
Davis.*

ligatory on the judge pronouncing it, when sitting in the supreme court of the state of *New-York ;* and it certainly cannot be admitted to possess higher authority in this Court.

There exists no doubt, that competent skill, as well as fidelity, in the discharge of his trust, may be legally demanded of an agent ; and that for a deficiency in either, he is responsible. *Paley* on *Agency* 4—7.

The plaintiff, to avail himself of this principle, has advanced the following propositions. 1. That the defendant was his agent ; and having received doubloons at 17 dollars each, and applied them to the freight and charges on his account rendered, at the rate of 15 dollars ; he, of course, was deficient in competent skill, or fidelity. 2. That the freight and charges were payable in the legal currency of the country where they were paid : and that there was a want of integrity or skill in making an application of the doubloons at their supposed actual, and not at their current value. Lastly, that the commission charged by *Davis,* on a bill drawn for the avails of the flour sold at *Rio Janeiro,* amounted to a guaranty, and subjected him to account for the doubloons at 17 dollars each.

1. The case is very peculiar. The defendant was the agent of the plaintiff to sell the wheat and flour, and to receive payment of the purchaser : and so far as this was effected, he was the agent of the Messrs. *Griswold* over the same subject. No sooner did the money reach his hands, than the whole of it became their property. It was held at their risk, and for their use ; to be appropriated in conformity with their order, which, undoubtedly, had before been given, in the *United States.* So far as the action of the agent was concerned, there is no ground of objection ; nor has any been made. He had sold the cargo, without any imputation of want of skill or fidelity ; he had received the money ; and by this act, in connexion with the contract between the plaintiff and the *Griswolds,* the money was in the hands of his principals. Consequently, he had ceased to be the agent of the plaintiff, but was bound to render his account. In doing this, he was performing a legal obligation in reporting on a past concern ; but he cannot, with strict propriety, be said to be fulfilling an agency. I think it was not within his authority, by the mode of rendering his account to the plaintiff, and to the *Griswolds,* for whom he was acting, to deprive the former of any legal right. The freight and charges were alone to be deducted ; and if the defendant has expressed an opinion

on the face of his account, that the plaintiff ought to pay *more* than the freight, he was not empowered to do this; nor can it be obligatory on the freighter.    Suppose the defendant had received payment in dollars, and putting the whole into the hands of the *Griswolds*, had stated an account, estimating each dollar, as applicable to the freight, to be the value of three-fourths of a dollar only; would this proceeding be obligatory on the plaintiff?    No more will the estimate of doubloons at four-fifths of their value.

I consider the plaintiff, on the matter in question, as not bound by the account rendered; and that a different supposition contravenes the liberal equity both of the common and commercial law.

2. The opinion expressed disposes of the second position, that the freight was payable in the legal currency of the country where it was to be paid.    Under the peculiar circumstances of this case, the proposition is, at best, doubtful; but admitting it, the principle only tends to show, that there was a mistaken supposition entertained by the defendant, which works no injury, as it, in no respect, varies the measure of accountability, on the part of the *Griswolds*.

3. With respect to the last proposition advanced, that the commission charged by *Davis* on the bill drawn for the avails of the flour, amounts to a guaranty, and subjects him to account for the doubloons at their current value, it is sufficient to say, that no such question is put to the court, by the remonstrance. The account rendered by the defendant, it is true, is referred to, and made parcel of the record.    It is, however, available only in support of the allegations made in the remonstrance, and not to authorize criticism or controversy on subjects concerning which no specific complaint has been made.    If, however, the question is considered, so far as the facts will warrant, it presents no difficulty.    The indorsement of the bill on which a percentage was charged, has been assimilated to the case of a person acting under a *del credere* commission.    A commission *del credere* is one, under which an agent, in consideration of an additional premium, engages to insure his principal, not only of the debtor's solvency, but of the punctual discharge of the debt.    *Paley* on *Agency*, 39.    *Beawes* 429.    *Grove* & al. v. *Dubois*, 1 *Term Rep.* 112.    Now, admit, for the sake of argument, that the defendant, by his guaranty of the bill, became an agent *del credere*; the stipulation was performed, by collecting and

paying the money to the *Griswolds*, and no obligation was broken. But all that can be said on this subject, is merely beating the air. It is not known from the record what was the nature of the guaranty; but it is known, that there was a contract by indorsement with the bill-holder, and not with the plaintiff.— He was a stranger to that transaction, not a party; and it is futile to say, that he was insured, by a proceeding, with which he had no imaginable connexion.

The other Judges were of the same opinion, except DAGGETT, J. who gave no opinion, having been of counsel in the cause.

Judgment affirmed.